IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| LISA SIDES, *et al.*,<br><br>                    Plaintiffs,<br><br>vs.<br><br>GLOBAL TRAVEL ALLIANCE, INC.,<br><br>                    Defendant. | CV 20-53-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiffs Lisa Sides, for herself and her daughter K.S.; Erin and Jackie Claunch, for themselves and their daughter K.C.; Tracy Smith, for herself and her son C.S.; Jennifer Laurel Wersland, for herself and her son K.W.; Julie Swenson, for herself and her daughter K.S.; and Julie Wrobel, for herself and her son E.W. ("Plaintiffs"), bring this putative class action against Defendant Global Travel Alliance, Inc. ("Global Travel"), alleging an improper application of cancellation policies to school trips in response to the COVID-19 pandemic and wrongful leveraging of alternatives to withhold refunds.  (Doc. 11.)

Presently before the Court is Plaintiffs' Motion for Class Certification (Doc. 12), Defendant's Motion to Dismiss (Doc. 14), and Plaintiffs' Motion for Status Conference (Doc. 35).  The motions have been referred to the undersigned under

1

28 U.S.C. § 636(b)(1)(B), are fully briefed, and ripe for review.  For the following reasons, the Court recommends that Plaintiffs' Motion for Class Certification be denied and Global Travel's Motion to Dismiss be granted in part and denied in part.  Plaintiffs' Motion for Status Conference will be denied.

## I.    Background[1]

Global Travel sells educational travel packages to students for a variety of destinations, such as Washington, D.C., New York City, or Europe.  Trips are generally booked a year in advance, pursuant to Global Travel's General Booking Conditions and Release Agreement ("Booking Agreement") and are paid in installments.  (*See* Doc. 11-1.)

The named-Plaintiffs are Montana parents and students who, along with putative class members, booked trips with Global Travel for trips in Spring 2020 but were hindered by the global COVID-19 pandemic.  On March 13, 2020, Global Travel sent a letter addressing the pandemic, detailing the standard cancellation policy, refund policy, trip protection plan coverage for pandemics, and Global Travel's right to cancel trips for safety reasons.  Global Travel followed up days later with a transferable trip voucher program that allowed participants to

---

[1] Motions to dismiss under Rule 12(b)(6) accept as true all factual allegations set out in the complaint, draw inferences in the light most favorable to the plaintiff, and construe the complaint liberally.  *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

reschedule their trip for a later date or receive a percentage-based refund depending on how close in time the original trip was scheduled.

Global Travel postponed K.S. and K.C.'s trip with Ben Steel Middle School in Billings, Montana on March 16 and presented three options: reschedule for August 2020, a 75 percent voucher, or a 50 percent refund. Plaintiff Lisa Sides rejected all three options on behalf of K.S. and demanded a full refund; Global Travel issued Sides a 50 percent refund against her wishes. Plaintiffs Erin and Jackie Claunch also declined the same three options on behalf of K.C. and demanded a full refund; Global Travel issued the Claunches a 50 percent refund against their wishes.

Global Travel also postponed C.S.'s trip with Kalispell Middle School in Kalispell, Montana on April 22 and presented the same options to the school's trip leader and principal. The school officials declined the voucher and rescheduling options, instead requesting a cash refund. Global Travel issued Plaintiff Tracey Smith a 70 percent refund on behalf of C.S.

Global Travel postponed K.W.'s trip with the Laurel Middle School in Laurel, Montana on March 16 and presented the same three options. Plaintiff Jennifer Wersland ultimately rejected the options and demanded a 100 percent refund. Global Travel issued Wersland a 50 percent refund on behalf of K.W against her wishes.

Global Travel postponed K.S.'s trip with Castle Rock Middle School in Billings, Montana on March 16 and presented the same three options.  Plaintiff Julie Swenson chose the voucher option and was issued a 75 percent voucher redeemable until the end of 2021 for travel through 2022.

Global Travel postponed E.W.'s trip with Sacajawea Middle School in Bozeman, Montana on April 16.  Because Sacajawea's trip was to Europe, Global Travel presented the trip leader the option to reschedule, which was declined. Global Travel then offered either a 70 percent refund or a 75 percent trip voucher. All Sacajawea travelers accepted the refund.

Plaintiffs then filed the instant action on April 24, 2020 and subsequently amended their complaint three times.  (Docs. 1, 4, 7, 11.)  The operative pleading is the Third Amended Complaint, filed on June 26, 2020, to which Plaintiffs attached Global Travel's Booking Agreement.  (Docs. 11, 11-1.)  A few days later, Plaintiffs moved the Court for class certification and filed its brief in support. (Docs. 12, 13.)  Plaintiffs contend Global Travel improperly conflated the customer cancellation policy and travel insurance clauses, with a provision permitting Global Travel to unilaterally cancel trips for safety reasons, and wrongfully withheld participants' funds.  (Docs. 11 at ¶ 1; 13 at 14-15.)

Plaintiffs propose a Class comprising all persons who purchased trip packages from Global Travel under the 2019-2020 Booking Agreement for travel

after January 31, 2020, faced cancellation due to the COVID-19 pandemic, and did not receive full refunds.  (Docs. 11 at ¶ 36; 11-1; 13 at 15.)  Plaintiffs assert claims for negligence (Count I), breach of contract (Count II), violation of Unfair Trade Practices and Consumer Protection Act (Count III), declaratory and injunctive relief (Count IV), and equitable constructive trust (Count V).  (Doc. 11. at ¶ 36.) Plaintiffs also propose a subclass comprised of Montana class members, or those who have a right to assert a claim under the Montana Consumer Protection Act, in Count III.  (*Id.* at ¶ 37.)

Global Travel subsequently moved to dismiss Plaintiffs' claims, arguing that Global Travel worked with customers to reschedule, complied with the terms of the Booking Agreement, and even went above and beyond its terms to offer vouchers amid the pandemic.  (Doc. 14.)

## II.   Motion for Class Certification

### A.   Fed. R. Civ. P. 23

The Court's decision to certify a class action is guided by Fed. R. Civ. P. 23. A party seeking to maintain a class action must demonstrate that each of the following prerequisites of Rule 23(a) are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

The party must also meet at least one of the three criteria listed in Rule 23(b).  These include: (1) that there is a risk of prejudice from separate actions; (2) that declaratory or injunctive relief is appropriate as to the class; or (3) that common questions of law or fact predominate, and a class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(1)-(3).

The party requesting certification bears the burden of proving by a preponderance of the evidence that all requirements for class certification are met. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).  The Court may certify a class only if it is satisfied, after "rigorous analysis," that the party seeking certification has met the requirements of Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).  Whether to grant class certification is within the discretion of the trial court.  *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978).

In the present case, Plaintiffs have based their motion for class certification on an erroneous standard.  (Doc. 20 at 6-7.)  Plaintiffs appear to state and follow a standard in which the Court accepts as true the complaint's allegations, citing *Burton v. Mt. W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 608 (D. Mont.

2003).  (Doc. 13 at 16.)  Since *Burton*, however, the U.S. Supreme Court has made clear that "Rule 23 does not set forth a mere pleading standard."  *Dukes*, 564 U.S. at 350.  Instead, "[a] party seeking class certification must *affirmatively demonstrate* [] compliance with the Rule—that is, he must be prepared to prove that there are *in fac*t sufficiently numerous parties, common questions of law or fact, etc."  *Id.*, (emphasis added).  The Supreme Court reiterated this evidentiary standard in *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013): "The party must also satisfy through *evidentiary proof* at least one of the provisions of Rule 23(b)." (Emphasis added.)  *Comcast* further emphasized a court's duty to conduct a "rigorous analysis," which relates directly to the moving party's burden to show that class certification is proper by a preponderance of the evidence.  See also, *Halliburton*, 573 U.S. at 275 (Recent decisions under Fed. R. Civ. P. 23 "have made clear that plaintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23 …"); *Ward v. Apple Inc.*, 784 F. App'x 539, 540 (9th Cir. 2019) (The court's rigorous analysis "requires looking beyond the pleadings."); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018) (plaintiff's evidentiary proof need not be admissible).

Therefore, contrary to Plaintiffs' assertions, the Court cannot accept the allegations in Plaintiffs' complaint as true; Plaintiffs must prove Rule 23's

requirements are "in fact" satisfied.  *Id.* at 349; *Brown v. Elextrolux Home Products, Inc.*, 817 F.3d 1225, 1233-34 (11th Cir. 2016).  See also, *Ellis v. Costco Wholsesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (finding the district court applied "impermissible legal criteria" by accepting the allegations in the complaint as true, rather than "resolving the critical factual disputes" overlapping with the Rule 23(a) requirements.)

Here, the only evidence before the Court is the Booking Agreement attached to the Third Amended Complaint and the affidavit of Global Travel President Ethan Screnock, filed with Global Travel's response to the motion to certify class. (*See* Docs. 11-1, 20-1.)  Therefore, the Court will evaluate Plaintiffs' motion for class certification in light of the limited available evidence.

## B.    Discussion

In its response to Plaintiffs' motion to certify class, Global Travel argues that Plaintiffs have failed to satisfy any of the requirements of Rule 23.  The Court finds it unnecessary to address each of the requirements, since the Plaintiffs' proof is plainly not sufficient to establish the second and third requirements; i.e., that there are questions of law or fact common to the class (commonality), or that the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality).

/ / /

## 1.    Commonality

Under Rule 23(a)(2), Plaintiffs must show that there are questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Commonality requires Plaintiffs to show class members "have suffered the same injury," and that their claims must be capable of class-wide resolution "in one stroke."  *Dukes*, 564 U.S. at 350.

Here, it appears the Booking Agreement may govern all Montana-based Plaintiffs, but it is unclear whether non-Montanan putative Class members signed the same agreement.  Plaintiffs proffer no evidence to establish this fact. Nevertheless, even if the putative class members share the Booking Agreement in common, each traveler's experience and situation with Global Travel appears to be unique and require individual assessments of their individual contractual relationships.

Global Travel offered different options to different schools at different times due to the varying dynamics of each trip and the evolving pandemic situation.  Ben Steele Middle School in Billings, Montana, for example, was going to Washington, D.C. and New York City departing May 6, 2020, but the trip was postponed on March 16.  (Doc. 20-1 at ¶¶ 7-8.)  On April 1, participants were offered three options: rescheduling, travel voucher for 75 percent of the cost, or a 50 percent refund under the Standard Cancellation Policy.  (*Id.* at ¶ 10.)  Lisa Sides, parent of

K.S., and Erin and Jackie Claunch, parents of K.C., declined the options, demanded a full refund, but then received a 50 percent refund under the cancellation policy.  (*Id.* at ¶ 12.)

Kalispell Middle School, on the other hand, was going to Washington, D.C. and Monticello, Virginia, and Global Travel offered different options (reschedule, 70 percent voucher, 70 percent refund) to the trip leader and school principal, who then declined the voucher and rescheduling options on behalf of participants.  (*Id.* at ¶¶ 18-19.)  Global Travel's offer of 70 percent refund, in this instance, exceeds the cancellation policy's ordinary 50 percent refund for cancellations between 60-31 days from travel date.  (*Id.* at ¶ 19.)  There is no evidence to suggest that Tracey Smith, mother of C.S., demanded a full refund or that the trip leader or school principal demanded the same on her behalf.

Across trips, some parents took different refund amounts; at least one parent took the voucher and another rescheduled.  (*Id.* at ¶¶ 26, 28-29, 34.)  It is not clear from the evidentiary record how many putative class members rejected all options presented, demanded full refunds, and received something less.  Each situation appears to have been resolved based on the individual circumstances of the traveler and the scheduled trip.  Thus, it cannot be said that "the same evidence will suffice for each member to make a prima facie showing" of commonality or that "the issue

is susceptible to generalized, class-wide proof." *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotations, citations omitted).

This is the Plaintiffs' burden to show.  In *Dukes*, the Supreme Court clarified that "[c]ommonality requires the plaintiff *to demonstrate* that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (emphasis added) (internal quotation, citations omitted).  Further, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350.  Similarly, in *Wang v. Chinese Daily News, Inc.*, the Ninth Circuit emphasized that if there is no evidence showing the entire class was subject to the same alleged practice then "there is no question common to the class." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir.2011)).

Plaintiffs' evidentiary showing fails to establish commonality, and the requirement is further contradicted by Screnock's affidavit, showing marked dissimilarities within the proposed class.  See, *Tyson Foods*, 577 U.S. at 453 ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'").

Thus, the Court finds the factual variations between individual Plaintiffs

calls into question the Court's ability to resolve Plaintiffs' claims "in one stroke."

*Dukes*, 564 U.S. at 350.

### 2.      Typicality

Rule 23(a)(3) requires that the claims of the named plaintiffs be "typical of

the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of

typicality is whether other members have the same or similar injury, whether the

action is based on conduct which is not unique to the named plaintiffs, and whether

other class members have been injured by the same course of conduct."  *Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The Supreme Court has

noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to

merge [because both seek to determine] whether the named plaintiff's claim and

the class claims are so interrelated that interests of the class members will be fairly

and adequately protected in their absence."  *Dukes*, 564 U.S. at 349, n.5.

Plaintiffs cannot show typicality due to same lack of an evidentiary showing.

Here, the record is limited to the Booking Agreement and Screnock's affidavit, the

latter of which illustrates a series of individual experiences.  Without contrary

evidence that typifies Global Travel's conduct, such as communications from

Global Travel to individual travelers cancelling trips or refusing refunds, that

caused the same or similar injuries that are not unique to the individual Plaintiffs

but to all putative class members, the Court is left with mere allegations of the Third Amended Complaint.  In short, Plaintiffs have not proffered sufficient evidence to illustrate that Plaintiffs' experiences are typical of the class they seek to represent.

### 3.    Remaining Rule 23 Elements

The Court need not entertain adequacy of representation under Rule 23(a)(4) or the type of class action under Rule 23(b)(2) or (3), due to the insufficiency of the commonality and typicality elements discussed above.  It is worth noting, however, that certification under Rule 23(b)(3) requires the Court to find that issues common to the class "predominate" over issues unique to individual class members.  Fed. R. Civ. P. 23(b)(3).  To satisfy this requirement, "a plaintiff must demonstrate that the claims are 'capable of proof at trial through evidence that is common to the class rather than individual to its members." *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 528 (S.D. Cal. 2011).  Thus, just as the commonality and typicality elements tend to merge, *Dukes*, 564 U.S. at 349 n.5, those elements overlap with the requirements of Rule 23(b)(3).  It then follows that the failure to show the commonality and typicality elements parallel denial of the "predominate" element of Rule 23(b)(3).

Accordingly, it is recommended that Plaintiffs' motion to certify class be denied.

13

III.   **Global Travel's Motion to Dismiss**

A.     **Rule 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); see also *Chavez v. Bank of America, N.A.*, 2010 WL 1854087 at *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)). While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quotations and citations omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do ..." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907

(9th Cir. 2003); *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011).

But the Court also may consider documents attached to the pleadings and may

consider documents incorporated into the pleadings by reference. *Ritchie*, 342

F.3d at 908.  Documents may be incorporated by reference into the pleadings

where "(1) the complaint refers to the document; (2) the document is central to the

plaintiff's claim; and (3) no party questions the authenticity of the document."

*Corinthian Colleges*, 655 F.3d at 999.  Here, the Booking Agreement is attached to

the Third Amended Complaint and central to Plaintiffs' claims.

### B.    Discussion

Global Travel asserts that it complied with the plain language of the

Booking Agreement and its actions were mandated by public health officials;

therefore, the Third Amended Complaint should be dismissed pursuant to Fed. R.

Civ. P. 12(b)(6).  (Doc. 15 at 6-7.)  Specifically, Global Travel argues that

Plaintiffs have failed to plead any facts that a duty exists independent of the

contract, that a breach of the express terms of the contract occurred, or that any

acts or practices offend established public policy or misled the Plaintiffs, thus their

claims for negligence, breach of contract, and violations of the Montana Consumer

Protection Act (Counts I – III) must be dismissed.  (*Id.* at 15-24.)  Next, Global

Travel argues that Plaintiffs' lack standing to bring a claim for declaratory

judgment and injunctive relief (Count IV).  (*Id.* at 25.)  For the final claim, Global

16

Travel asserts that Plaintiffs' request for the creation of an equitable constructive trust (Count V) should be dismissed because Plaintiffs failed to allege sufficient facts to establish a constructive trust is warranted or to allege that Global Travel has been unjustly enriched.  (*Id.* at 29.)  Last, Global Travel argues that because Plaintiffs fail to state a plausible individual claims, they cannot represent others for class action relief.  (*Id.* at 30.)

The Court will address each in turn.

### 1.    Count I – Negligence

"Negligence is a common law claim in tort, distinct from a claim for relief in contract."  *House v. U.S. Bank National Association,* 481 P.3d 820, 828 (Mont. 2021).  To maintain a claim for negligence, plaintiffs must prove four essential elements: "the defendant had a legal duty; the defendant breached that duty; the breach caused injury; and damages."  *Bassett v. Lamantia*, 417 P.3d 299, 305 (Mont. 2018).   Global Travel moves to dismiss Plaintiffs' claim on the grounds that no duty exists which could give rise to a claim of negligence.  Whether a legal duty exists is a matter for the court to determine.  *Id.*

A cause of action for negligence can arise between parties to a contract.  For tort liability to arise, however, a party must breach a duty owed to another "independently of the contract, and which duty would exist even if no contract existed."  *Boise Cascade Corp. v. First Sec. Bank of Anaconda*, 600 P.2d 173, 181

(Mont. 1979).  Global Travel asserts that it owes no duty to Plaintiffs outside of the Booking Agreement.  (Doc. 15 at 16.)  Plaintiffs respond that their negligence claim is based on a duty independent of the Booking Agreement.  (Doc. 31 at 18.)  Specifically, Plaintiffs allege in their Third Amended Complaint that "Global Travel had a duty to exercise reasonable care in its conduct involving its response to the COVID-19 pandemic."  (Doc. 11 at ¶ 19.)

To support the imposition of this duty, Plaintiffs point to two Montana statutes that provide for a general ordinary standard of care, Mont Code Ann. §§ 27-1-701 and 28-1-201.  (Doc. 31 at 18-19.)  Section 27-1-701 provides that a person is responsible for "an injury occasioned to another by the person's want of ordinary care ...."  Section 28-1-201 further states that "[e]very person is bound, without contract, to abstain from injuring the person or property of another ...."  As Plaintiffs recognize, the Montana Supreme Court has determined that these statutes are consistent with the well-established common law duty of reasonable care.  *Maryland Casualty Company v. Asbestos Claims Court,* 460 P.3d 882, 893 (Mont. 2020).[2]  But "reasonable care under the circumstances is the general

---

[2]  The Montana Supreme Court has recognized that the predecessor of § 27-1-701, providing that "[e]very one is responsible...for an injury occasion to another by his want of ordinary care or skill in the management of his property...," was merely a declaration of common law.  *Beinhorn v. Griswold,* 69 P. 557 559 (1902).  See also, *Bassett,* 460 P.3d at 309 (recognizing that § 27-1-701 and § 28-1-201 "are consistent with well-established common law).

*standard* of duty of care owed when one owes a common law duty of care to another under the circumstances of a particular case." *Id.* at 894 (emphasis in original). The "more fundamental question," however, is whether the alleged tortfeasor owed a legal duty of care in the first place. This must be determined "as a threshold matter of law." *Id.*

Therefore, by relying upon Montana statutes generally requiring the exercise of ordinary or reasonable care, Plaintiffs merge the applicable standard of care with the existence of a legal duty of care. The Montana Supreme Court has determined that these are separate inquiries. See e.g., *Bassett,* 417 P.3d at 310 (having found the existence of a legal duty, "the question becomes what duty is owed."). The standard of care does not establish a legal duty, it defines the conduct required to meet that duty. *Bassett,* 417 P.3d at 310 ("The standard of care prescribes how a person must act to satisfy the duty of care he owes to the Plaintiff.").

The same is true with respect to Plaintiffs' pledge to produce expert testimony to establish the applicable standard of care. The Montana Supreme Court has found that the standard of care in certain professions is the care exercised by reasonably prudent individuals in that industry. *Id.* Thus, such testimony may establish the standard of care in the travel industry, but it would not establish the existence of a legal duty under Montana law. The existence of a duty is determined by examining "whether the imposition of that duty comports with

19

public policy, and whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff." *Fisher v. Swift Transp. Co.,* 181 P.3d 601, 607 (Mont. 2008).

In this case, Global Travel would have no duty to Plaintiffs in the absence of the Booking Agreement.  Certainly, Global Travel would have no independent duty to Plaintiffs to exercise reasonable care in responding to the COVID-19 pandemic, as alleged in the Third Amended Complaint.  Plaintiffs' claim is based solely upon the alleged breach of the terms of the contract.  Where there is no duty other than a duty created by contract, a plaintiff's remedy is for breach of contract. *Deschamps v. Farwest Rock, Ltd.*, 474 P.3d 1282, 1288 (Mont. 2020).

Accordingly, Plaintiffs have failed to allege a cognizable legal theory based on negligence.  The Court recommends that Global Travel's motion to dismiss Count I be granted.

### 2.     Count II – Breach of Contract

A claim for breach of contract requires: (1) a contract, (2) a breach of an obligation under the contract, and (3) damages as a result of the breach.  *King v. Recreational Equip., Inc*., 2016 WL 8711411, at * 3 (D. Mont. 2016).  Here, the second element is at issue.

Global Travel argues that it complied with the express terms of the Booking Agreement and Plaintiffs failed to allege a breach of those express terms.  (Doc. 15

at 18.)  Global Travel also contends that Plaintiffs' "passing assertion" that the Booking Agreement is a contract of adhesion, ambiguous, violates public policy, and unenforceable is contradicted by the plain language of the agreement.  (*Id.* at 21.)

Plaintiffs respond that the Third Amended Complaint pleads a breach of contract by alleging misapplication of the traveler cancellation penalty to keep funds after Global Travel unilaterally cancelled their trips; that Global Travel admits the student cancellation provision does not apply when it cancels a trip; and that the language in the company cancellation provision is ambiguous.  (Doc. 31 at 24.)

At the core of Plaintiffs' breach of contract claim are two provisions in the Booking Agreement.  The first is Global Travel's right to cancel trips that are rendered unsafe, which reads:

> 7. The Company shall have the right, at any time in its discretion and without liability or cost, to cancel any trip or portion of a trip, or make an alteration in itinerary, or accommodation, in the event of any trip being rendered unsafe.

(Doc. 11-1 at 2, ¶ 7.)  The second is the Standard Cancellation Policy, which reads:

> • Deposits, Trip Protection Plan, late fees and 3% convenience fee are non-refundable at any time.

> • 90-61 days prior to departure, Global Travel Alliance retains 30% of the <u>trip cost</u> per person (includes deposit)

• 60-31 days prior to departure, Global Travel Alliance retains 50% of the trip cost per person (includes deposit)

• 30 days or fewer prior to departure, Global Travel Alliance retains 100% of the trip cost per person (includes deposit)

> o No refund will be issued should you cancel 30 days or less prior to departure.

> o All cancellations must be in writing to our office by the dates listed in your agreement.

> o We strongly recommend that you consider purchasing our **Trip Protection Program (TPP)**. Contact Global Travel Alliance for more information.

…

• All cancellations must be made in writing by mail, fax or email to cancel@globaltravelalliance.com and should include a reason for canceling.

(Emphases original) (*Id.* at 5-6.)

Plaintiffs allege that Global Travel exercised its right to cancel on or about March 18, 2020 and implemented a new voucher program.  (Doc. 11 at ¶ 13.) Plaintiffs contend this gave customers the "untenable choice" of either accepting a voucher or losing a significant portion of paid funds "on the misguided basis that Global Travel's cancelation constituted cancelation by the students and their families." (*Id.* at ¶ 14.)  Plaintiffs allege this was a breach of the Booking Agreement in at least two ways:

(a) by canceling the trip due to the COVID-19 pandemic and then asserting the customer cancellation clause in the Conditions form (which applied only to cancelation by customers for personal reasons)

22

to justify keeping part or all of the money paid by Plaintiffs and other Class Members, and

(b) by creating a "voucher program" that was not in the Conditions form and not part of the contract and by using the customer cancellation clause in the Conditions form to leverage Plaintiffs and other Class Members to accept the vouchers for travel at a different and less desirable time.

(Doc. 11 at ¶ 23.)

The Court finds that Plaintiffs have plausibly alleged a claim for breach of contract. The Third Amended Complaint attaches the parties' Booking Agreement, which sets forth the principal provisions at issue. In reviewing the provisions, paragraph seven provides Global Travel with the right and discretion to cancel, alter, or accommodate any trip in the event it is considered unsafe "without liability or cost." But there is no mention of the Standard Cancellation Policy in paragraph seven. Indeed, the provision is silent as to what happens to customers' payments in the event Global Travel exercises its right to cancel. Global Travel asserts that the provision authorizes it to exercise its rights to alter, accommodate, or cancel "'without liability or cost' or the requirement to provide traveler refunds." (Doc. 15 at 10.) Plaintiffs argue that the phrase "without liability or cost" is ambiguous, undefined, and should not be construed to mean Global Travel could cancel the trip without refunding any money. (Doc. 11 at 10.)

Without reaching the merits of the controversy at this early stage, Plaintiffs' allegation that Global Travel conflated the two cancellation provisions to justify

retention of all or part of Plaintiffs' payments plausibly states a claim for breach of contract.

Therefore, the Court recommends that Global Travel's motion to dismiss Plaintiffs' claim for breach of contract in Count II be denied.

### 3.      Count III – Unfair Trade Practices/Consumer Protection

The Montana Consumer and Protection Act ("MCPA"), Mont. Code Ann. § 30-14-101 *et seq.*, makes it unlawful for someone participating in the conduct of any trade or commerce to engage in unfair methods of competition and unfair or deceptive acts or practices.  Mont. Code Ann. § 30-14-103.  The statute does not define what an unfair or deceptive practice entails, so courts give consideration and weight to interpretations of the Federal Trade Commission and federal courts, as well as to the non-exhaustive list of practices found in Mont. Admin. R. § 23.19.101.  Mont. Code Ann. § 30-14-104; *Rohrer v. Knudson*, 203 P.3d 759, 763 (Mont. 2009).  In *Rohrer*, the Montana Supreme Court found "as a matter of law that an unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Id.* at 764.  The Administrative Rules of Montana also provides as an example of unfair or deceptive practice when a party "states that a transaction involves rights, remedies or obligations that it does not involve."

Admin. R. Mont. § 23.19.101(1)(l); *Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1184 (Mont. 2014).

Global Travel argues that Plaintiffs' claim has no factual basis and need not be taken as true. (Doc. 15 at 23.) Plaintiffs argue that the Third Amended Complaint states a claim under the MCPA, and that whether Global Travel's conduct comports with the definition of a deceptive practice is a question for a jury. (Doc. 31 at 29.) Specifically, Plaintiffs allege Global Travel engaged in deceptive acts or practices in the conduct of trade or commerce by:

> conflating its company cancellation policy and its customer cancellation policy and by attempting to use the customer cancellation policy to leverage Class Members into accepting none or a fraction of the funds which they are entitled to have returned; by using a customer cancellation clause of the Conditions form improperly and against Class Members when tours were canceled not by Class Members but by Global Travel; by otherwise attempting to benefit from this global pandemic to improve its own financial position beyond what it would have been had the tours gone forward; and by otherwise depriving Class Members of the full refund of their funds.

(Doc. 11 at ¶ 26.)

The Court finds Plaintiffs have stated a claim under the MCPA. Plaintiffs' allegations plausibly allege that Global Travel's misapplication of the cancellation provisions to leverage acceptance Global Travel's terms, and to withhold and deprive the students and their families of funds to improve the company's financial position, amount to unfair or deceptive acts or practices.

Therefore, the Court recommends the Defendants' motion to dismiss

Plaintiffs' claim under the MCPA be denied.

### 4.    Count IV – Declaratory and Injunctive Relief

Count IV of the Third Amended Complaint seeks both declaratory and

injunctive relief.  Plaintiffs seek a declaration that Global Travel's cancellation of

their trips does not entitle the company to retain their funds and, in the alternative,

that the cancelation provisions of the Booking Agreement are void as against the

law and public policy.  (Doc. 11 at ¶¶ 30-31.)  Plaintiffs also seek to enjoin Global

Travel from withholding Class Members' funds.  (*Id.* at ¶ 31.)

Article III of the U.S. Constitution requires that a party have standing to

bring a particular claim.  Standing is generally established by "showing an injury

in fact traceable to the challenged action and redressable by a favorable decision."

*Canatella v. State of California*, 304 F.3d 853, 852, (9th 2002).  But additional

considerations are required in the context of injunctive or declaratory relief.  It

must be shown that the plaintiff "has suffered or is threatened with a concrete and

particularize legal harm, coupled with a sufficient likelihood that he will again be

wronged in a similar way."  *Id.* (Internal citations and quotations omitted.)  The

"plaintiffs must demonstrate that a credible threat exists that they will again be

subject to the specific injury for which they seek injunctive or declaratory relief."

*Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (citations and internal quotations omitted.)

Global Travel argues Plaintiffs lack standing to obtain declaratory or injunctive relief because they cannot establish a sufficient likelihood of the same or similar future harm.  (Doc. 15 at 25.)  Plaintiffs respond the Defendant's "mootness" argument fails because Global Travel continues to withhold their funds and their harm is ongoing.  (Doc. 31 at 31.)

The Court agrees with Global Travel.  Plaintiffs have alleged a breach of contract, and that Global Travel has retained Plaintiffs' payments after exercising its authority to postpone or reschedule trips for safety reasons.  But this is a concrete past injury redressable by Plaintiffs' claim for breach of contract.  To obtain declaratory relief, it is not sufficient to demonstrate a past injury, a plaintiff "must instead show a very significant possibility of future harm in order to have standing."  *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995).  See also, *Clear Connection Corp. v. Comcast Cable Communications Management, LLC*, 501 F.Supp.3d 886, 898 (E.D. Cal. 2020) ("declaratory relief is inappropriate because the record clearly reflects that Comcast seeks to redress past wrongs, not declare future rights.")  The Third Amended Complaint fails to allege any imminent or future injury that would establish standing for declaratory or injunctive relief.

In addition, Plaintiffs' claim for declaratory relief is duplicative of their claim for breach of contract. "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Nevertheless, "[v]arious courts have held … that, where determinations of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate." *Streamcast Networks, Inc. v. IBIS LLC,* 2006 WL 5720345 at *3-4 (C.D. Cal. May 2, 2006) (collecting cases). Plaintiffs' breach of contract claim will resolve those same questions and provide the same remedy. A determination will be made in that claim whether the Booking Agreement permitted Global Travel to retain funds paid, and if so, whether the cancelation provisions are void as against public policy. Further, a finding that Global Travel breached the contract will provide the same remedy of requiring payment of any amount wrongfully withheld as damages. In short, Plaintiffs do not allege how its claims for breach of contract and associated damages will not settle all the issues for which Plaintiffs seek declaratory relief. See, *StreamCast* 2006 WL 5720345, at *4.

Plaintiffs' request for injunctive relief fails for an additional reason. Injunctive relief is an equitable remedy that is limited to instances in which the moving party has no other adequate remedy at law. *Mort v. United States*, 86 F.3d

28

890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law....") (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)).  In *Sooner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020), the Ninth Circuit dismissed a claim for equitable relief because the plaintiff failed to allege that she lacked an adequate remedy at law.  Since then, district courts in the Ninth Circuit have applied *Sooner* to claims for injunctive relief and require the plaintiff to plead the lack of an adequate remedy at law.  See, *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) collecting cases); see also *Huynh v. Quora, Inc.*, 2020 WL 7495097, at *19 (N.D. Cal. Dec. 21, 2020) (same).  In their Third Amended Complaint in this case, Plaintiffs did not allege that they do not have an adequate remedy at law to support their claim for injunctive relief.

Thus, the Court recommends the motion to dismiss as to declaratory and injunctive relief be granted.  But "[t]o the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend." *Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1092 (E.D. Cal. 2020).  The Court cannot conclude that Plaintiffs could not cure the foregoing deficiencies if allowed leave to amend.  Therefore, dismissal of Plaintiffs' injunctive and declaratory relief claim should be with leave to amend.

29

### 5.    Count V – Equitable Constructive Trust

A constructive trust is a remedy to rectify unjust enrichment. *Volk v. Goeser*, 367 P.3d 378, 388 (Mont. 2016) (quoting *N. Cheyenne Tribe v. Roman Cath. Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 457 (Mont. 2013)).  Under Mont. Code Ann. § 72-38-123, "[a] constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if the holder were permitted to retain it."  Thus, a plaintiff must first establish a claim of unjust enrichment before a court can consider whether to impose a constructive trust as a possible remedy.  *N. Cheyenne Tribe*, 296 P.3d at 457.

To establish a claim for unjust enrichment, proof of three elements is required: (1) a benefit conferred upon a defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value. *Volk*, 367 P.3d at 389; *N. Cheyenne Tribe*, 296 P.3d at 456-457.

Global Travel argues that "[b]ecause Plaintiffs' substantive claims against Global Travel fail, an equitable trust is not warranted."  (Doc. 15 at 29.)  As discussed above, however, Plaintiffs have stated claims for breach of contract and violation of the MCPA.  Therefore, the Court cannot find at this juncture that

Global Travel was not unjustly enriched by the retention of funds paid to them by Plaintiffs, or that an equitable trust is not warranted.

Therefore, the Court recommends that the motion to dismiss as to Count V should be denied.

### 6.    Class Action Relief

Global Travel asserts that since Plaintiffs cannot state individual claims their class allegations also fail.  (Doc. 15 at 30.)  Again, the Court has found that Plaintiffs have stated claims for breach of contract and violation of the MCPA. Therefore, to the extent Plaintiffs can cure the defects in their request for class certification, the motion to dismiss Plaintiffs' claim for class action relief should be denied.

## IV.   Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that:

1.     Plaintiffs' Motion to Certify Class (Doc. 12) be **DENIED**; and

2.     Global Travel's Motion to Dismiss (Doc. 14) be **GRANTED** as to Count I, **GRANTED** with leave to amend as to Count IV, and **DENIED** in all other respects.

It is **FURTHER ORDERED** that Plaintiffs' Unopposed Motion for Status Conference (Doc. 35) is denied.

31

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 16th day of August, 2021.

TIMOTHY J. CAVAN
United States Magistrate Judge

32