IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| LISA SIDES, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> GLOBAL TRAVEL ALLIANCE, INC., <br><br> Defendant. | CV 20-53-BLG-SPW <br><br> ORDER ADOPTING FINDINGS AND RECOMENDATIONS |

Before the Court are U.S. Magistrate Judge Cavan's Findings and Recommendations (Doc. 91) regarding Plaintiff Lisa Sides *et al*'s Motion for Partial Summary Judgment (Doc. 80) and Defendant Global Travel Alliance's Motion for Summary Judgment (Doc. 83) and Motion to Strike or Deny Class Certification (Doc. 63). Judge Cavan recommends that the Court deny Plaintiffs' motion and grant Defendant's motions. (Doc. 91 at 2). Plaintiffs timely filed objections. (Doc. 94). Defendant filed a response to those objections. (Doc. 97). For the following reasons, the Court adopts Judge Cavan's recommendations.

I.     **Background**

1

*A.     Factual Background*[1]

Global Travel is a student travel organization that sells educational travel packages to students for a variety of destinations, such as Washington, D.C., New York City, and Europe. The named-Plaintiffs are Montana parents and students who booked trips with Global Travel in 2020, which were later hindered by the global COVID-19 pandemic.

Global Travel trips are generally booked a year in advance, pursuant to its General Booking Conditions and Release Agreement ("Booking Agreement") and are paid in installments. Two provisions of the Booking Agreement are central to Plaintiffs' breach of contract claim. The first provides that Global Travel has the right to "cancel any trip or portion of a trip, or make an alteration in itinerary, or accommodation," if any trip is rendered unsafe. (Doc. 11-1 at 2, ¶ 7.)

The second is a Standard Cancellation Policy ("Cancellation Policy"), which provides for a refund policy based on the number of days prior to departure a trip is cancelled.[2] The Cancellation Policy also "strongly recommends" that travelers

---

[1] Because Plaintiffs did not object to the factual recitation provided by Judge Cavan, the Court, having reviewed it for clear error, adopts his recitation and provides his language here for convenience.

[2] The Standard Cancellation Policy reads:

- Deposits, Trip Protection Plan, late fees and 3% convenience fee are non-refundable at any time.
- 90-61 days prior to departure, Global Travel Alliance retains 30% of the trip cost per person (includes deposit)

2

consider purchasing trip protection. Under Global Travel's Trip Protection Program, a traveler may cancel for personal reasons, and receive a full refund less certain non-refundable fees if a trip is cancelled at least 24 hours prior to the scheduled departure.

The travelers in this case were middle school students from Ben Steele Middle School, Laurel Middle School, and Castle Rock Middle School in Billings, Montana, and Sacajawea Middle School in Bozeman, Montana. Their trips were scheduled for the spring of 2020. On March 13, 2020, however, the United States declared a national emergency in response to the COVID-19 pandemic. On the same date, Global Travel sent a letter to its prospective travelers addressing the pandemic, detailing the Cancellation Policy, outlining Trip Protection Plan coverage, and reiterating Global Travel's right to cancel trips for safety reasons.

---

- 60-31 days prior to departure, Global Travel Alliance retains 50% of the trip cost per person (includes deposit)
- 30 days or fewer prior to departure, Global Travel Alliance retains 100% of the trip cost per person (includes deposit)
- No refund will be issued should you cancel 30 days or less prior to departure.
- All cancellations must be in writing to our office by the dates listed in your agreement.
- We strongly recommend that you consider purchasing our **Trip Protection Program (TPP)**. Contact Global Travel Alliance for more information.

…

- All cancellations must be made in writing by mail, fax or email to cancel@globaltravelalliance.com and should include a reason for canceling.

(Emphases in original.) (Doc. 11-1 at 5-6.)

3

Days later, Global Travel began the process of postponing and rescheduling trips for future dates due to the safety concerns caused by the pandemic. Global Travel notified travelers that if they declined to participate in their rescheduled trip, Global Travel also offered an option for a transferable trip voucher to be used at a later date. Travelers from Ben Steele Middle School, Laurel Middle School, and Castle Rock Middle School were also offered an additional option for a "flexible independent trip" ("Billings FIT trip") from Billings to Washington D.C., Gettysburg, Baltimore, and Philadelphia, which was scheduled in June 2021. If all of those options were declined, Global Travel advised travelers it would treat their refusal as a traveler cancellation, and refunds would be offered pursuant to the Booking Agreement's Cancellation Policy.

Plaintiffs K.S.'s and K.C.'s trip with Ben Steele Middle School was originally scheduled to depart on May 6, 2020. When the pandemic required the trip be postponed, Global Travel initially provided three options: reschedule for a later date, accept a 75 percent travel voucher, or, if the first two options were rejected, Global Travel would treat the rejection as a traveler cancellation and issue a 50 percent refund. The Ben Steele travelers were also later offered the additional option of participating in the Billings FIT trip. Plaintiffs Lisa Sides, on behalf of K.S., and Erin and Jackie Claunch, on behalf of K.C., rejected all options and

demanded a full refund. Global Travel issued the Sides and Claunch's a 50 percent refund.

Plaintiff K.W.'s trip with Laurel Middle School was scheduled to depart on May 7, 2020. When postponed, Global Travel offered the same three options—participate in the rescheduled trip, accept a travel voucher, or cancel under the Booking Agreement. The Laurel travelers were also later offered the Billings FIT trip. Plaintiff Jennifer Wersland, on behalf of K.W., ultimately demanded a full refund. Global Travel, thus, issued a 50 percent refund pursuant to the Booking Agreement.

Plaintiff K.S.'s trip with Castle Rock Middle School was scheduled to depart on April 9, 2020. Global Travel again presented travelers with the same options. Plaintiff Julie Swenson, on behalf of K.S., accepted, and was issued, a 75 percent travel voucher.

Plaintiff E.W.'s trip to Europe with Sacajawea Middle School was scheduled to depart on June 16, 2020. When the trip was postponed, the school's trip leader declined to reschedule the trip, and requested that Global Travel offer travelers a 70 percent cash refund or 75 percent travel voucher. E.W. accepted the refund.

With the exception of Sacajawea Middle School, the trips for the remaining schools were all rescheduled in May and June 2021, and were all successfully

completed.[3] A portion of the travelers from each school participated in the rescheduled trips, while others opted to take part in the Billings FIT trip, accept the travel voucher, or cancel their trips.

*B. The Magistrate's Findings and Recommendations*

The Magistrate found that summary judgment in Defendant's favor was appropriate because the parties' contract unambiguously permitted Defendant to cancel travel or make alterations to the itinerary for safety reasons. (Doc. 91 at 11). He determined that the COVID-19 pandemic was an event that rendered the scheduled original trips unsafe. (*Id.*). The Magistrate found that the undisputed facts demonstrated that Defendant acted in accordance with the contract when it rescheduled Plaintiffs' trips to a later date in light of the COVID-19 pandemic. (*Id.*). Because the trips were not cancelled, and instead were postponed, he determined that Plaintiffs' argument that Defendant rescinded the contract necessarily failed. (*Id.* at 12). He found that rescheduling the trip for a later date was "plainly consistent with the parties' intent at the time of contracting to provide a safe educational experience." (*Id.* at 11). Furthermore, the Magistrate determined that, while the voucher program was not accounted for in the contract, Defendant's offering of vouchers or alternatives trips was not a breach of any

---

[3] The remaining trips were rescheduled and went forward successfully on the following dates: (1) Ben Steele Middle School trip on May 5-9, 2021; (2) Laurel Middle School trip on May 6-10, 2021; and (3) Castle Rock trip on June 5-9, 2021. (Doc. 84 at ¶¶ 21, 35, 44.)

6

provision in the contract. Finding no material dispute of facts existed, the Magistrate recommended granting Defendant's motion and denying Plaintiffs'. (*Id.* at 12).

Additionally, the Magistrate recommended granting Defendant's Motion to Strike or Deny Class Certification because Plaintiffs still have not produced evidence that the four threshold requirements for certification under Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy of representation—have been met. (Doc. 91 at 15). He noted that in the year since the initial motion to deny certification, Plaintiffs have failed to produce any new evidence or conduct any additional discovery to address the earlier-identified deficiencies. (*Id.* at 16).

## II. Legal Standards

### A. Standard of Review

Litigants are entitled to *de novo* review of those findings or recommendations to which they properly object. 28 U.S.C. § 636(b)(1). When neither party objects, this Court reviews a magistrate's Findings and Recommendations for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). A party makes a proper objection "by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority such that the district court is able to identify the issues and the reasons supporting a

7

contrary result." *Lance v. Salmonson*, 2018 WL 4335526 at *1 (D. Mont. Sept. 11, 2018). A district court, when conducting review of a magistrate's recommendations, may consider evidence presented for the first time in a party's objections, but it is not required to. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).

### B. *Summary Judgment*

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A moving party without the ultimate burden of persuasion at trial, may also carry its initial burden on summary judgment by "show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In such circumstance, summary judgment is appropriate because "a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and . . . by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. That is, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III. Analysis

### A. *Objections to the Magistrate's Recommendation for Partial Summary Judgment in Favor of Defendant*

Plaintiffs make five specific objections to the Magistrate's recommendation that summary judgment be granted in favor of Defendant regarding the breach of contract claims. The Court will address each in order.

#### 1. *Plaintiffs' First Objection*

Plaintiffs first argue that the Magistrate incorrectly applied a reasonableness test when analyzing whether the contract was breached. (Doc. 94 at 8).[4] The Magistrate stated that the Booking Agreement:

> permits Global Travel to cancel travel or make alterations to a travel plan for safety reasons. There is no dispute that Plaintiffs' scheduled trips were "rendered unsafe" by the COVID-19 pandemic. Therefore, the parties' contract permitted Global Travel to make changes to the travel plan to provide for traveler safety. This is precisely what Global Travel did in rescheduling Plaintiffs' trips for a later date when the travel could be safely completed.
> 
> The Court acknowledges that postponing a trip for a year may, in some circumstances, be a broad interpretation of "mak[ing] an alteration in itinerary." If, for example, a trip needed to be altered because of a temporary storm, postponing travel for a year may not be a reasonable application of the contract's safety provision. But under the circumstances presented here, there is no dispute that a global pandemic rendered the action necessary, and it was plainly consistent with the parties' intent at the time of contracting to provide a safe educational experience.
> 
> The Court, therefore, finds Plaintiffs' argument that Global Travel rescinded the contract unavailing. Global Travel did not cancel any scheduled trips or rescind the Booking Agreement.

---

[4] For consistency, the Court will refer to the page numbers generated by CM/ECF on the documents, rather than the parties' own page numbers.

10

(Doc. 91 at 11-12)

Plaintiff argues that this analysis is incorrect because it injects negligence standards into breach of contract analysis. (Doc. 94 at 9). This argument is founded on what seems to be a willful misreading of the Magistrate's analysis. Plaintiffs chop up the language of the Magistrate's order in support of their argument, stating that the Magistrate analyzed whether the alteration was "'necessary,' 'reasonable,' and consistent with the parties' intent at the time of contracting." (*Id.* at 9). Reading the recommendation in its full context makes clear that the Magistrate did not apply negligence standards. The only time the Magistrate uses words like "necessary" and "reasonable" is in an aside, discussing whether a change in itinerary for a day versus for a year or more may change the analysis. He clearly stated that under the plain language of the contract—the appropriate standard and the standard Plaintiffs claim he did not employ—Global Travel was permitted to change the itinerary in response to a scheduled trip being rendered unsafe. This was not error, and Plaintiffs' objection is founded on a misrepresentation and is not well taken.

Plaintiffs also argue that the Magistrate incorrectly determined that an alteration in itinerary included rescheduling a trip. (Doc. 94 at 10). Plaintiffs state, "[r]escheduling a trip for the following year is not an alteration in the itinerary. Reference to any standard dictionary definition of 'itinerary' makes that clear.

11

(*Id.*). But Plaintiffs' own supplied definition states that an itinerary can be "the proposed outline [of a journey or tour]." (*Id.* at n5). Plainly, a change in the route or proposed outline of a journey can include a change in the dates of the journey, including rescheduling the route or proposed outline of a trip for the following year.

## 2. *Plaintiffs' Second, Third, and Fourth Objections*

Plaintiffs next make several objections that the Magistrate interpreted the booking agreement based on the deposition testimony of lay witnesses, did not consider "Global Travel's improper use of the Standard Cancellation Policy," and erred by referring to the Trip Protection Program. Plaintiffs do not ever explain what legal authority supports a contrary result regarding any of these asserted errors.

The Magistrate found that the plain language of the contract allowed Defendant to reschedule the trips when a trip was rendered unsafe. He further found that the COVID-19 pandemic rendered the original itinerary unsafe. Accordingly, Defendant did not breach the contract by rescheduling the trips and applying the cancellation policy to any student who wanted a refund. There was no interpretation of deposition testimony or improper use of the cancelation policy. Reference to the Trip Protection Program has nothing to do with this legal analysis; it is not a proper objection to state that "[i]t is unclear why [reference to the Trip

Protection Program] is included in the recommendations" because it does not present legal argument and supporting authority such that the district court is able to identify the issues and the reasons supporting a contrary result. *See Lance*, 2018 WL 4335526 at *1. Plaintiffs do not even identify a contrary result.

### 3. *Plaintiffs' Fifth Objection*

Finally, Plaintiffs argue that the Magistrate rejected their recission claim without due analysis. (Doc. 94 at 16). They state that the proposed eighth grade trip held a year later is materially different, such that the object of the contract cannot be performed because the students are now not in the same school or with the same student body and their high school careers are well underway. (*Id.*). Plaintiffs' underlying briefing makes no mention of recission based on the students being older or in different schools, only that "Global Travel rescinded the Contract when it cancelled the Contract's sole object, e.g. the scheduled class trip." (Doc. 81 at 5). This demonstrates that the analysis regarding cancelation necessarily includes analysis regarding recission. It cannot be error for the Magistrate Judge to fail to analyze facets of an issue that were never presented to him and are now only being raised on objection. Furthermore, the contract says nothing about the purpose of the trip being exclusively an "Eighth Grade Class Trip." It does not limit participants to eighth grade students. Nor does it promise that the trip will only occur when all students are in eighth grade. The Magistrate correctly

determined that summary judgment in favor of Defendant is appropriate on Plaintiffs' recission claim.

### B. *Objections to the Magistrate's Recommendation to Strike Class Certification*

Plaintiffs make three specific objections to the Magistrate's recommendation that Defendant's motion to strike class certification be granted. The Court will address each in order.

#### 1. *Plaintiffs' First Objection*

Plaintiffs first argue that the Magistrate applied the wrong standard when considering the motion to strike class certification, stating that he applied the standard applicable to an affirmative motion in favor of class certification. (Doc. 94 at 20). Plaintiffs argue that Federal Rule of Civil Procedure 23(d)(1)(D) requires Defendant to shoulder the burden of proof and that the Magistrate did not properly apply that burden. (Doc. 94 at 19-20). Confusingly, Plaintiffs do not provide any legal analysis or caselaw regarding what the outcome should be, they merely note that they believe the wrong standard was applied. Nevertheless, the Court, applying the Rule 23(d)(1)(D) standard, determines that striking the class claims is appropriate.

Class certification has already been previously denied by the Court, and Plaintiffs have produced no new evidence in more than a year since the initial denial. Defendant argues that Plaintiffs' proposed class cannot ever be certified

because of the previously identified issues of commonality, typicality, and capability of common resolution. (Doc. 64 at 26; *see also* Doc. 36 at 9-13 and Doc. 47 at 6). In response, Plaintiffs have provided no new evidence, new argument, or any supporting legal authority stating that these defects could be cured at some point in the future. Basic issues regarding commonality and typicality—such as whether all parties have suffered the same injury and whether that injury is capable of class-wide resolution—persist. Plaintiffs have presented no evidence or argument to meet Defendant's arguments in support of striking the class. As such, the Court finds that striking the class claims from the complaint is appropriate.

### 2. *Plaintiffs' Second Objection*

Plaintiffs also object that they have not actually had a year to conduct discovery, as they and Defendant agreed to stay the pending class discovery pending a ruling on the partial motions for summary judgment. (Doc. 94 at 21). This argument minimizes the fact that it was Plaintiffs' tactical choice to stay their discovery requests and "streamline the case." (*Id.*). Plaintiffs state that "there is no factual basis to conclude that Plaintiffs should have completed or presented discovery on class certification." (*Id.* at 22). Neither this Court nor the Magistrate has held that discovery needed to be completed at this point to survive a motion to strike; however, Plaintiffs present no new argument at all beyond a request for

more time.  Plaintiffs have not stated what further evidence in support of class certification they hope to find nor provided any sort of schedule or timeline for the Court.

### 3. *Plaintiffs' Third Objection*

Finally, Plaintiffs state that the Magistrate conflated damage differences between the Plaintiffs as a lack of commonality or typicality in his evaluation of the class certification factors.  (*Id.* at 23-24).  This objection is unavailing.  The Magistrate relied upon his previous findings on class certification when determining the motion to strike.  (Doc. 91 at 16).  Plaintiffs did not object to those findings when they were adopted by this Court.  (*See* Doc. 47 at 5-6).  They cannot now complain of errors in that analysis.  The Court adopts the Magistrate's findings regarding Defendant's motion to strike.

## IV. Conclusion

IT IS ORDERED that the proposed Findings and Recommendations entered by the United States Magistrate Judge (Doc. 91) are ADOPTED IN FULL.

IT IS FURTHER ORDERED that:

1. Plaintiff's Motion for Partial Summary Judgment (Doc. 80) is DENIED;
2. Defendant's Motion for Partial Summary Judgment (Doc. 83) is GRANTED; and

3. Defendant's Motion to Strike or Deny Class Certification (Doc. 63) is GRANTED.

DATED this 24th day of March, 2023.

                                                    SUSAN P. WATTERS
                                                   United States District Judge